WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Zan Kia Ellertson, et al.,<br><br>                    Plaintiffs,<br><br>v.<br><br>City of Mesa, et al.,<br><br>                    Defendants. | No. CV-15-00765-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendants' Motion to Dismiss (Doc. 13) Plaintiffs' first amended complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the foregoing reasons, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiffs Zan Kia Ellertson, Marianne J. Ellertson, and Ellertson's Dobson Ranch Mobil, Inc. ("EDRM")[1] are the registered owners of "Eazy Picken' Pawn" ("EP Pawn"), "Eazy Title," and "Eazy Tire and Automotive."  All three businesses are located in Mesa, Arizona.  On April 1, 2015, Plaintiffs filed a complaint in the Maricopa County Superior Court against Defendants City of Mesa as the municipal corporation liable for the acts of the Mesa Police Department ("Mesa PD"), Mesa PD Detective Nicholas Lien and his spouse, and Mesa PD Detective Steven Berry and his spouse.  On April 27, 2015, Defendants removed the case to this Court.  And on May 27, 2015, Plaintiffs filed their FAC.  Plaintiffs' FAC raises nine causes of action: (1) violation of civil rights; (2)

---

[1] Plaintiffs Zan and Marianne Ellertson are the sole shareholders of EDRM.

defamation; (3) false light invasion of privacy; (4) intentional infliction of emotional distress; (5) tortious interference with business expectations; (6) negligence; (7) negligent training and supervision of employees; (8) conversion; and (9) wrongful taking.

Plaintiffs' claims arise out of two separate searches and seizures conducted by the Mesa PD. The first incident occurred during a June 20, 2013 traffic stop of non-party Aaron Ellertson ("Mr. Ellertson"), Plaintiffs' Zan and Marianne Ellertson's son and day-to-day manager of EP Pawn.  Mr. Ellertson holds no ownership interest in any of Plaintiffs' businesses.  Incident to the stop, Detective Lien seized $100,000 worth of jewelry belonging to EDRM that Mr. Ellertson was transporting for Plaintiffs.  Initially, Plaintiffs retained counsel and made numerous unsuccessful efforts to retrieve the jewelry from the Mesa PD.  At that time, the Mesa PD refused to return the jewelry because it was being held as evidence.

After the traffic stop, Mesa PD continued to investigate Mr. Ellertson.  The investigation included the use of undercover detectives who engaged Mr. Ellertson and offered to sell him stolen property while he worked at EP Pawn.  At no point did the Mesa PD investigate or implicate the Plaintiffs themselves into Mr. Ellertson's alleged illegal conduct.  Mesa PD's reports on the investigation noted that Mr. Ellertson never conducted any of his alleged criminal activity in the presence of Plaintiffs and rather took efforts to conceal his actions and any property obtained through his alleged criminal conduct from them.  The reports also noted that Mr. Ellertson kept the majority of his alleged stolen property at his personal residence and not at EP Pawn.

A second search and seizure occurred on or about April 2, 2014, when the Mesa PD secured and executed a warrant to search EP Pawn.  The search warrant specified certain items to be seized due to their relation to Mr. Ellertson's alleged criminal activity.  But the instant complaint alleges that the Mesa PD seized many items that were in no way connected to the alleged crimes and that during the search, Mesa PD seized almost every item over $20.  The FAC further alleges that Mesa PD also breached and destroyed all of EP Pawn's safes and display cases despite possessing the keys necessary to open

said cases and safes without damaging them.  In total, it alleges that Mesa PD seized more than 1200 items lawfully owned or possessed by Plaintiffs and being sold at the store.  The seized property included items in pawn,[2] Plaintiffs' personal property, and items owned by EDRM.

Soon after the incident, the Mesa PD reported the seizure of EP Pawn's property to the local news, describing EP Pawn as ground zero for a gang syndicate in the business of buying and selling stolen property.  As a result of the publically reported seizure, customers of EP Pawn with items in pawn sought the return of their property from Mesa PD.  Yet, while the Mesa PD possessed all of the seized property, Detective Lien instructed customers to contact the Plaintiffs directly for the return of their property and provided them with Plaintiffs' home phone number and address.  Plaintiffs received numerous threatening phone calls from irate customers, and individuals vandalized their home.  The FAC alleges that as a result of both a troubling encounter with the Mesa PD during their search of EP Pawn and Mesa PD's damaging public statements, Plaintiff Zan Ellertson suffered emotional and physical distress such as panic attacks, paranoia, and other ailments.

On May 19, 2014, Plaintiffs filed a motion to contravene the search warrant in an effort to recover their seized property from the Mesa PD.  The next day, the Maricopa County Attorney's Office ("MCAO") filed a notice of seizure for forfeiture and notice of pending forfeiture.  On information and belief, Plaintiffs allege that the Mesa PD provided the MCAO false information or withheld exculpatory information related to Plaintiffs' non-participation in and ignorance of Mr. Ellertson's alleged criminal activity.  In so doing, the Mesa PD prompted the MCAO to file its action seeking forfeiture of Plaintiffs' property.  Plaintiffs opposed the forfeiture action, and on December 26, 2014, the Maricopa County Superior Court entered a partial stipulated judgment ordering all seized property not otherwise claimed by third parties returned to the Plaintiffs.  The City

---

[2] Items in pawn are owned by third parties but given as collateral to EP Pawn for loans that are redeemable upon payment of the loan.

of Mesa did not comply with the court order for several months.  In fact, not until Plaintiffs filed a motion seeking civil contempt against a number of City of Mesa employees were any items returned.  Although the City of Mesa has given back most of the seized property, Plaintiffs received some of their items back damaged, other pieces of Plaintiffs' personal property as well as several high value items, including four motorcycles, are unaccounted for, and some items still remain with the Mesa PD on an alleged "evidence hold."  Finally, Plaintiffs' business licenses and documents related to Plaintiffs' sale of firearms remain missing.

## DISCUSSION

## I.    Legal Standard

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the nonmoving party.  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To avoid dismissal, a complaint need contain only "enough facts to state a claim for relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The principle that a court accepts as true all of the allegations in a complaint does not apply to legal conclusions or conclusory factual allegations.  *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  To show that the plaintiff is entitled to relief, the complaint must permit the court to infer more than a mere possibility of misconduct.  *Id.* / / /

- 4 -

**II.     Analysis**

    **A.     Judicial Notice and Consideration of Extrinsic Evidence**

Generally, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted).  Two exceptions exist, however.  *Id.*  First, "[i]f the documents are not physically attached to the complaint, they may be considered if the documents' 'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them."  *Id.* (citation omitted).  Second, pursuant to Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record."  *Id.* (*quoting Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)).

Defendant, in its motion to dismiss, attached six exhibits extrinsic to Plaintiffs' FAC.  All six exhibits, as Defendants' point out, are matters of public record, and include: (1) the State of Arizona's indictment of Mr. Ellertson; (2) the State of Arizona's direct complaint against Mr. Ellertson; (3) the MCAO's notice of seizure for forfeiture and notice of pending forfeiture; (4) the state court's partial stipulated judgment; (5) the State of Arizona's complaint in civil forfeiture; and (6) the state court's order to vacate Plaintiffs' probable cause hearing.  Defendants, citing *Mack*, argue that this Court may take notice of all six documents and their contents since they are "matters of public record."  *Mack*, 798 F.2d at 1282.

While Defendants are correct that a court may take judicial notice of "matters of public record[,] . . . a court may not take judicial notice of a fact that is 'subject to reasonable dispute.'"  *Lee*, 250 F.3d at 689 (*quoting* Fed. R. Evid. 201(b)).  The law thus limits the extent to which this Court may take judicial notice of and consider Defendants' attached exhibits.  Although all six exhibits are matters of public record, Plaintiffs dispute the facts underlying some of the documents.  Specifically, Plaintiffs challenge the scope of Defendants' seizure of property from EP Pawn based on and *limited* by a search warrant supported by the factual allegations contained in Mr. Ellertson's indictment (Ex. 1), the State's direct complaint against Mr. Ellertson (Ex. 2), and the State's complaint in

civil forfeiture (Ex. 5).  Thus, since the *existence* of those three documents is undisputed, but the facts contained in them are subject to reasonable dispute, this Court may and does take judicial notice of the *fact* of Mr. Ellertson's indictment, the *fact* that the State of Arizona filed a direct complaint against Mr. Ellertson, and the *fact* that the State of Arizona filed a complaint in civil forfeiture, but nothing more.  *See id.* at 689.  On the other hand, Plaintiffs do not dispute the remaining three exhibits; thus, this Court takes judicial notice of the MCAO's notice of forfeiture (Ex. 3), the state court's partial stipulated judgment (Ex. 4), and the state court's order to vacate (Ex. 6).

**B.    Federal Qualified Immunity Related to Plaintiffs' 42 U.S.C. § 1983 Claim**

Plaintiffs allege a § 1983 claim based on the Mesa PD's search of EP Pawn and seizure of 1200 plus items from Plaintiffs' business.  Plaintiffs argue that Defendants' "illegal destruction, seizure, and conversion" of Plaintiffs' property violated their civil rights.  Defendants argue that the Mesa PD and detectives Lien and Berry are entitled to qualified immunity from such a claim.

Qualified immunity, if found, is "an entitlement not to stand trial or face the other burdens of litigation."  *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (internal quotation marks omitted) (citation omitted).  In other words, qualified immunity is "an *immunity from suit* rather than a mere defense to liability."  *Id.* (citation omitted) (emphasis in original).  Accordingly, a party's entitlement to qualified immunity should be determined "at the earliest possible stage in litigation."  *Id.* at 201 (citation omitted).

Qualified immunity involves a two-step analysis.  First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Id.* (citation omitted).  And "if a violation c[an] be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."  *Id.*  A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he

1    confronted." *Id.* at 202 (citation omitted). [3]

2        Defendants here are not entitled to qualified immunity because Plaintiffs'

3    pleadings sufficiently allege that Defendants violated their clearly established civil rights.

4    *Id.* at 201.  While Plaintiffs concede that the Mesa PD obtained a warrant to search EP

5    Pawn in relation to Mr. Ellertson's alleged illegal activity, Plaintiffs also allege facts

6    plausibly demonstrating that the Defendants in their seizure exceeded the scope

7    authorized by the warrant, either converting the seized property or losing it, and

8    unreasonably destroying the EP Pawn store during their search.

9        The scope of the right to search and seize property was defined by the warrant and

10   exceeding that scope violates the clearly established rights of the Plaintiffs.   This

11   principle has been long established.   "A seizure becomes unlawful when it is 'more

12   intrusive than is necessary.'" *Ganwich v. Knapp*, 319 F.3d 1115, 1119 (9th Cir. 2003)

13   (*quoting Florida v. Royer*, 460 U.S. 491, 504 (1983)); *see also Wilson v. Lane*, 526 U.S.

14   603, 611 (1999) (*citing Ariz. v. Hicks*, 480 U.S. 321, 325 (1987)) ("Police actions in

15   relation to the execution of a warrant must be related to the 'objectives of the authorized

16   intrusion.'"); *see also Horton v. Cal.*, 496 U.S. 128, 140 (1990) ("[I]f the scope of the

17   search exceeds that permitted by the terms of a validly issued search warrant or the

18   character of the relevant exception from the warrant requirement, the subsequent seizure

19   is unconstitutional without more.")   The same legacy applies to the principle that

20   unnecessarily destructive behavior violates the Fourth Amendment.  *See, e.g.*, *San Jose*

21   *Charter of the Hells Angels Motorcycle Club v. City of San Jose,* 402 F.3d 962, 974 977

22   (9th Cir. 2005).

23       Thus, assuming the veracity of Plaintiffs' factual allegations and viewing them in

24   the light most favorable to Plaintiffs, it would be clear to a reasonable detective of the

25   _____

26       [3] The Supreme Court, in *Pearson v. Callahan*, 555 U.S. 223 (2009), receded from
*Saucier's* requirement that first a party must show a violation of a constitutional right and
27   then, if proven, must show that the right was clearly established at the time of the other
party's misconduct.  *Pearson* clarified that a district court is not required to apply the
28   *Saucier* two-step sequence in that order, but rather, courts may exercise their discretion in
deciding which of the two prongs should be considered first.  *Id.* at 242–43.

Mesa PD that it would be unlawful to exceed the scope of the warrant, destroy the interior of EP Pawn when Mesa PD possessed keys to open every safe and case in the store, and to either fail to return seized property or to lose seized property in the Mesa PD's possession. *See Saucier*, 533 U.S. at 202 (citation omitted). Defendants, therefore, are not entitled to qualified immunity and the motion is denied as to Plaintiffs' § 1983 claim.

### C.    Arizona's Asset Forfeiture Statute

Defendants cite a number of Arizona's asset forfeiture statutes and argue that such statutes immunize them against all of Plaintiffs' state law claims because they had "reasonable cause" to seize Plaintiffs' property for forfeiture. *See* A.R.S. § 13-4314(E) ("If it appears that there was reasonable cause for the seizure for forfeiture . . . the claimant is not, in such case, entitled to costs or damages, nor is the person or seizing agency that made the seizure . . . liable to suit or judgment on account of such seizure . . . ."). They assert that "reasonable cause" is established as a matter of law since Mesa PD acted under the authority of a warrant based on probable cause.

Defendants' arguments are premature. A motion to dismiss attacks a plaintiff's pleadings. Yet, these arguments ignore the pleaded facts and instead require this Court to look beyond the FAC and into the details of the Mesa PD's search warrant and the police department's implementation of it as well as other resulting behavior. Defendants' contentions also rely on resolving factual disputes in favor of Defendants, *i.e.*, to determine the existence of "reasonable cause" (§ 13-2314(E)), or to determine whether Mr. Ellertson, and implicitly EP Pawn, were actually involved in racketeering (*see In re 1996 Nissan Sentra*, 201 Ariz. 114, 118, 32 P.3d 39, 43 (Ariz. Ct. App. 2001)), or to determine whether the seized property did in fact facilitate the commission of the underlying offense (§ 13-2314(G)(3)). All of these inquiries may be appropriate on a motion for summary judgment but not on a Rule 12(b)(6) motion. Here, the Court assumes all of Plaintiffs' allegations to be true; thus,, Defendants' arguments do not support dismissing Plaintiffs' FAC on the ground that Arizona's forfeiture statutes may

1   legally immunize Defendants from liability on an undisputed factual record.

2        **D.**     **Timeliness of Plaintiffs' Notice of Claim**

3        Under A.R.S. § 12-821.01(A), "[p]ersons who have claims against a public entity

4   . . . or a public employee shall file claims with the person or persons authorized to accept

5   service for the public entity . . . or public employee . . . within one hundred eighty days

6   after the cause of action accrues."  Accrual occurs "when the damaged party realizes he

7   or she has been damaged and knows or reasonably should know the cause, source, act,

8   event, instrumentality or condition that caused or contributed to the damage."  § 12-

9   821.01(B).  The notice requirement is strictly construed.  *See, e.g.*, *Harris v. Cochise*

10   *Health Sys.*, 215 Ariz. 344, 352, 160 P.3d 223, 231 (Ariz. Ct. App. 2007) ("Compliance

11   with the notice provision of § 12–821.01(A) is a 'mandatory' and 'essential' prerequisite

12   to such an action . . . [and f]ailure to comply with the statute is not cured by actual notice

13   or substantial compliance.") (citations omitted). A timeliness defense can be raised and

14   resolved on a motion to dismiss if it is evident from the face of the complaint that a claim

15   is time barred.  *See Anson v. Am. Motors Corp.*, 155 Ariz. 420, 421, 747 P.2d 581, 582

16   (Ariz. Ct. App. 1987).  Courts determining an accrual date on a motion to dismiss assume

17   the truth of the complaint's facts and then evaluate each cause of action individually.

18   *See, e.g.*, *Dube v. Likins*, 216 Ariz. 406, 412, 167 P.3d 93, 99 (Ariz. Ct. App. 2007);

19   *Ledvina v. Town of Marana*, 2015 WL 464384, at *10 (D. Ariz. Feb. 4, 2015).

20        Defendants argue that any of Plaintiffs' state law claims related to the Defendants'

21   initial June 20, 2013 search of Mr. Ellertson's car and seizure of $100,000 in jewelry are

22   time barred since Plaintiffs filed their notice of claim on September 22, 2014—well over

23   180 days since the incident.  Yet, the MCAO did not file its forfeiture action against

24   Plaintiffs' seized property until May 22, 2014, and the City of Mesa did not return

25   Plaintiffs' seized property until months after the conclusion of the forfeiture action

26   marked by the state court's entry of a partial stipulated judgment.

27        It is not evident from Plaintiffs' FAC that his negligence claim, as it relates to the

28   $100,000 in jewelry, is time barred under § 12-821.01(A).  Moreover, analyzing the

FAC's allegations of negligence suggest that it accrued later than June 20, 2013—the date of the seizure.  Plaintiffs allege that "Defendants had a duty to take adequate precautions to safeguard Plaintiffs' property, including . . . extremely fragile jewelry," and then breached that duty when, as Plaintiffs seem to allege, the Mesa PD returned the jewelry damaged.  Assuming those allegations to be true, then the accrual date, or the date "when the damaged party realizes he or she has been damaged," would be the date of the jewelry's return—a date much later than the date of the initial seizure.  Either way, at this juncture in the litigation, it is not clear enough to this Court that Plaintiffs' claims related to Defendants' first search and seizure are time barred.  Finally, Defendants present case law holding that claims of illegal search and seizure accrue at the time of the search, *see Venegas v. Wagner*, 704 F.2d 1144, 1146 (9th Cir.1983); however here, Plaintiffs' claim of negligence is divorced from the search and seizure itself, but rather relates to the Mesa PD's treatment of Plaintiffs' property long after the incident.  As such, Plaintiffs' claim is not unquestionably governed by *Venegas'* search and seizure accrual timeframe.

Consequently, the Court denies Defendants' motion to dismiss based on § 12-821.01(A)'s time bar.

### E.    Impact of the State Court's Partial Stipulated Judgment

Defendants contend that Plaintiffs are barred from bringing this action because they entered into a partial stipulated judgment as a result of the forfeiture action.  (Doc. 13, Ex. 4.)  Defendants make two points.  First, Defendants assert that Plaintiffs entered into a contractual release of claims when they agreed to the partial stipulated judgment. Second, Defendants argue that the doctrine of res judicata bars Plaintiffs' claims.

Defendants' first argument mischaracterizes the language of the partial stipulated judgment, which only disposes of the seized property being held by Mesa PD, and then states that both parties to the judgment will bear their own costs and both parties waive their right to appeal the judgment.  (*Id.*)  Plaintiffs' FAC, on the other hand, neither raises an issue with the costs related to the forfeiture action nor is it a de facto appeal of the

judgment, *i.e.* it does not argue for some amendment to or reversal of the judgment. Accordingly, no contractual release is applicable to this action.

As to res judicata, or claim preclusion, the doctrine provides that a final judgment on the merits bars further claims by the parties or their privies based on the same cause of action. *See Tahoe–Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003). Res judicata does not apply here for various reasons, foremost being that there is no commonality of claims between the partial stipulated judgment in the forfeiture action and Plaintiffs' FAC before this Court. The partial stipulated judgment dispensed with specific seized pieces of property and ordered that they be returned as part of an *in rem* proceeding. The FAC, on the other hand, raises nine causes of action alleging civil rights violations and tortious conduct by Defendants. No portion of either document invokes the doctrine of res judicata. The argument is thus denied.

### F.     Prosecutorial Independence

Defendants' argument that the principle of prosecutorial independence precludes Plaintiffs' § 1983 claim confuses Plaintiffs' FAC and is thus inapposite. Plaintiffs' FAC does not challenge the validity of the Mesa PD's search warrant and thus does not conflict with the principle of prosecutorial independence. Rather, Plaintiffs' FAC, in part, alleges that while under the color of a valid warrant the Mesa PD overstepped their authority when they seized items unrelated to the Mesa PD's investigation and indictment of Mr. Ellertson and then proceeded to either damage or lose those items while they were in their possession. The protections afforded by the principle of prosecutorial independence are, therefore, inapplicable and do not support dismissal.

### G.     Plaintiffs' State Law Claims

#### 1.     Defamation and False Light Invasion of Privacy

Plaintiffs raise both a defamation and false light claim against Defendants. While Defendants fail to challenge the adequacy of Plaintiffs' pleadings,[4] Defendants do raise

---

[4] Defendants, in their reply brief, do make the argument that the statements Plaintiffs cite in their complaint "are not 'statements' that can support a defamation claim." Beyond that bare legal conclusion, Defendants provide neither further argument

the shield of qualified immunity, and argue that statements made by a detective to a third party that are allegedly defamatory can fall within a detective's qualified immunity from civil liability that is created by Arizona case law.  *See Portonova v. Wilkinson*, 128 Ariz. 501, 503, 627 P.2d 232, 234 (1981).  That is true; however, "[i]n Arizona an occasion for a publication is conditionally or qualifiedly privileged where circumstances exist which cast upon a defendant the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty."  *Id.* (citation omitted).  Defendants bear the burden of establishing the factual predicate for the qualified immunity.  *See id.*  Here, Defendants fail to establish that the statements made by Detective Lien, Detective Berry, and other detectives of the Mesa PD to the press constitute a communication in the performance of their official duties as detectives. Moreover, to even make that argument Defendants would need to call on facts outside the pleadings thus the argument is not appropriate to a motion to dismiss.

Defendants' final argument raising the defense of substantial truth also relies on facts outside of the pleadings.  *See Manriquez v. City of Phoenix*, 2014 WL 1319297, at *14 (D. Ariz. Mar. 31, 2014).  In order to establish substantial truth, the argument requires the consideration of facts outside the pleadings to prove that Defendants' statements to the press were imbued with truth.  Consequently, Defendants' motion to dismiss is denied as to Plaintiffs' defamation and false light invasion of privacy claims.

### 2.     Intentional Infliction of Emotional Distress and Tortious Interference with Business Expectations

Plaintiffs raise an intentional infliction of emotional distress ("IIED") and a tortious interference with business expectations ("TIBE") claim.  Defendants essentially assert the same counter-argument against both claims.  Defendants argue that because Mesa PD acted incident to a valid warrant based on probable cause, Defendants' actions were lawful and thus cannot meet the extreme and outrageous standard required by

---

nor any authority supporting their claim, thus it does not persuade this Court to rule differently.

Plaintiffs' IIED claim.  Similarly, Defendants argue that because they acted lawfully under a colorable warrant, Plaintiffs cannot prove that the Defendants acted with "improper motive or means" and intentionally conflicted with Plaintiffs' business expectations.  *See Neonatology Assocs., Ltd. v. Phoenix Perinatal Assocs. Inc.*, 216 Ariz. 185, 187, 164 P.3d 691, 693 (Ariz. Ct. App. 2007).

Plaintiffs' IIED claim argues that by accosting Plaintiff Zan Ellertson when he arrived at EP Pawn during the search and seizure, disseminating false information about Plaintiffs', and giving out Plaintiffs' personal information, Defendants engaged in extreme and outrageous conduct resulting in Plaintiff suffering severe emotional distress and physical illness.  Plaintiffs' TIBE claim alleges that by destroying the EP Pawn store and defaming Plaintiffs in the press, the Defendants interfered with Plaintiffs' business expectations.  The validity of the Mesa PD's search warrant is not challenged in either claim; thus, the warrant's validity does not absolve the Defendants of liability as a matter of law.  The motion is denied as to those causes of action.

### 3.    Negligence

Plaintiffs allege a negligence claim against Defendants for their failure to adequately care for and keep track of Plaintiffs' property seized from Mr. Ellertson's car and EP Pawn.  Defendants contend that notwithstanding whether Defendants in fact acted negligently, Arizona law does not recognize simple negligence claims against police officers for their discretionary decisions and conduct while engaging in police activity. *See Landeros v. City of Tuscon*, 171 Ariz. 474, 831 P.2d 850 (Ariz. Ct. App. 1992). Specifically, Defendants argue that because the Mesa PD, in the course of their police conduct, made the discretionary decision to search EP Pawn and seize 1200 pieces of property, Defendants are immunized from liability for negligence.  Negligence claims related to a police department's discretionary decisions made in the course of their official duties, *e.g.*, to investigate or arrest an individual, are not recognized under Arizona law.  *See id.* at 852 ("As far as simple negligence [in a police officer's investigation of a crime] is concerned, we believe the public interest mandates a rejection

of such a tort."); *Wright v. City of Phoenix*, 2011 WL 4071993, at *4 (D. Ariz. Sept. 13, 2011) ("[P]olice officers are not liable for mere negligence when arresting civilians . . . ."). Yet unlike the plaintiffs in *Landeros* or the other cases Defendants cite, Plaintiffs do not allege that the Mesa PD is liable for negligently investigating and then searching EP Pawn. Rather, Plaintiffs assert that Defendants acted negligently in their care and return of Plaintiffs' property. The allegation, therefore, falls outside the immunity created by *Landeros* since it does not raise a negligence claim related to the Mesa PD's discretionary decisions while acting in their official duty as police officers.

One paragraph of Plaintiffs' negligence allegation, however, does seem to fall within *Landeros* and its progeny's bar on simple negligence claims. Paragraph 97 states that the Mesa PD essentially breached their duty of care when they overstepped the scope of its search warrant when it seized "everything of value" at EP Pawn. No liability can attach to the Mesa PD's discretionary decision to seize Plaintiffs' property pursuant to a valid warrant based solely on a theory of simple negligence; rather, Plaintiffs must allege facts showing wanton or gross negligence. *See Landeros*, 831 P.2d at 851. Defendants' motion is therefore granted to the extent Plaintiffs' negligence claim attaches liability to the Defendants' decisions made in the course of their official duties; otherwise, the motion is denied.

### 4.    Negligent Training and Supervision of Employees

Plaintiffs argue that the City of Mesa is liable for the torts of the Mesa PD's detectives and their failure to adequately train and supervise Detective Lien, Detective Berry, and other Mesa PD detectives who caused Plaintiffs to suffer damages. "For an employer to be held liable for the negligent hiring, retention, or supervision of an employee, a court must first find that the employee committed a tort." *Kuehn v. Stanley*, 208 Ariz. 124, 130, 91 P.3d 346, 352 (Ariz. Ct. App. 2004) (citation omitted). Plaintiffs have adequately pleaded various tortious allegations against Defendants. Furthermore, Detective Lien, Detective Berry, and other Mesa PD detectives are all employees of the City of Mesa. *See cf. Picht v. Peoria Unified Sch. Dist. No. 11 of Maricopa Cty.*, 641 F.

Supp. 2d 888, 898 (D. Ariz. 2009) (rejecting plaintiff's negligent supervision claim since the court had previously rejected the underlying tort claim the plaintiff alleged against the employer's employee).

Defendants, argue, however that Plaintiffs must also allege facts showing that the City of Mesa knew that Defendants lacked competency and were therefore a risk to others. *See Quinonez for & on Behalf of Quinonez v. Andersen*, 144 Ariz. 193, 197, 696 P.2d 1342, 1346 (Ariz. Ct. App. 1984). *Andersen's* requirement that the employer possess some amount of knowledge of the employee's incompetency applies specifically to claims of negligent *hiring*; but, the case law does not support extending the requirement to Plaintiffs' claim for negligent training and supervision. Accordingly, Plaintiffs' allegations of negligent training and supervision of employees are adequate to sustain this motion to dismiss.

### 5. Conversion and Wrongful Taking

Plaintiffs allege a conversion and wrongful taking claim as counts five and nine of their FAC. Since Defendants overall immunity arguments are denied, and Defendants otherwise fail to address either of these issues directly, the claims survive.

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. 13) is granted in part and denied in part.

Dated this 8th day of January, 2016.

Honorable G. Murray Snow
United States District Judge